1

2

3

4

5                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF WASHINGTON
6

7   ERIK KESSACK, individually,            CASE NO.4:13-CV-5062-EFS

8                      Plaintiff,
                                           **ORDER GRANTING IN PART AND**
9         v.                               **DENYING IN PART DEFENDANTS'**
                                           **MOTION FOR SUMMARY JUDGMENT, AND**
10  WALLA WALLA COUNTY; J. MICHAEL         **AMENDING CAPTION**
    HUMPHREYS, in his individual
11  capacity; JAMES ROMINE, in his
    individual capacity; RYAN L.
12  ALLEN, in his individual capacity;
    TANNER HARRIS, in his individual
13  capacity; and JOHN DOES 1-5, in
    their individual capacities,
14
15                     Defendants.

16       When Plaintiff Erik Kessack was an inmate at Walla Walla County

17  Jail, he was attacked and injured by a fellow inmate, Fernando Saenz,

18  Jr. Mr. Kessack filed this lawsuit seeking recovery under 42 U.S.C. §

19  1983 and Washington state law.  Defendants seek summary judgment in

20  their favor because Plaintiff Eric Kessack 1) failed to exhaust his

21  administrative remedies, 2) failed to present evidence that any of the

22  Defendants knew that Mr. Saenz presented a safety risk to Mr. Kessack,

23  3) failed to present evidence that any Defendant negligently supervised

24  Mr. Kessack, and 4) failed to identify a deficiency in the Walla Walla

25  County training program that caused Mr. Kessack's injury.  ECF No. 28.

26  Mr. Kessack opposes the motion in its entirety and also clarifies his

ORDER - 1

claims.    This  Order  supplements  and  memorializes  the  Court's  oral[1]

rulings.    The  Court  grants  Defendants  summary  judgment  as  to  Mr.

Kessack's  42  U.S.C.  §  1983  claim  and  denies  summary  judgment  as  to  1)

Mr.  Kessack's  state-law  claims  against  Walla  Walla  County  and  2)

Defendants'  failure-to-exhaust  administrative-remedies  affirmative

defense.

**A.    Factual Background[2]**

**        1.    Incident**

Mr.  Kessack  was  incarcerated  at  the  Walla  Walla  County  Jail  from

July  20,  2010,  to  October  27,  2010.    After  his  intake,  Mr.  Kessack  was

assigned  to  a  housing  pod  near  the  officer's  booth.    According  to  Mr.

---

[1]  A  telephonic  hearing  occurred  on  December  18,  2014.    Mr.  Kessack
    was  represented  by  Loren  Cochran,  and  Ken  Miller  appeared  on
    Defendants'  behalf.

[2]  The  parties  submitted  a  Joint  Statement  of  Uncontroverted  Facts.
    ECF  No.  40.    These  facts  are  established  consistent  with  Federal
    Rule  of  Civil  Procedure  56(d),  and  are  set  forth  in  this  "Factual
    Background"  without  citation  to  the  record.    When  considering  this
    motion  and  creating  this  factual  section,  the  Court  1)  believed  the
    undisputed  facts  and  Mr.  Kessack's  evidence  and  2)  drew  all
    justifiable  inferences  in  Mr.  Kessack's  favor  unless  they  were  flatly
    contradicted  by  the  record.    *See Anderson v. Liberty Lobby,* 477  U.S.
    242,  255  (1986); *Scott v. Harris*,  550  U.S.  372,  380  (2007).

ORDER – 2

1   Kessack, many inmates in that housing pod were gang members affiliated
2   with the 18th Street Sureños.  Although Mr. Kessack was not affiliated
3   with a gang and did not previously have problems with gangs, he started
4   having problems in the housing pod.  For instance, Mr. Kessack disagreed
5   with Jacihel Contreras, a Sureños gang member, regarding television
6   usage.  ECF No. 29, Ex. A at 23:10-25.  Because of his problems with
7   Mr. Contreras and the Sureños, Mr. Kessack orally requested a housing
8   move from either Officer Tanner Harris, Officer Brian Martin, or Officer
9   Brian Allen.  ECF No. 29, Ex. A at 25:2-11; ECF No. 34, Ex. 1 at 24:17
10  & 89:2.  No immediate action was taken by the officers.  Mr. Kessack
11  then called his defense attorney Jerry Makus and told him of the problems
12  he was having in his pod with the gang members.  ECF No. 34, Ex. 1 at
13  32: 4-14.  Mr. Makus then called the Walla Walla County Jail and spoke
14  to Officer Jean Hall.  ECF No. 34, Ex. 2 at 19:4-22; ECF No. 34, Ex. 6.
15  Officer Hall then spoke to Captain James Romine and advised him that
16  Mr. Makus had called and reported that Mr. Kessack was having problems
17  with gang members.  ECF No. 34, Ex. 2 at 1-6.  Within approximately ten
18  minutes of Mr. Kessack's telephone call to Mr. Makus, Mr. Kessack was
19  moved from his initial pod to pod two. ECF No. 34, Ex. 1 at 32:15-20.
20  The current record does not identify whether pod two did, or did not
21  have, Sureños gang members.  No notation of this phone call and its
22  substance was recorded in the jail's books or prisoner computer records.
23        On August 6, 2010, Mr. Kessack was injured in the shower.  At his
24  deposition, Mr. Kessack stated that he slipped in the shower and injured
25  himself; his injuries necessitated a hospital emergency room visit.  ECF
26  No. 29, Ex. A at 31:4-22.  During his time at the emergency room, pod

two was locked down so that jail staff could conduct an investigation as to Mr. Kessack's shower incident.  ECF No. 34, Ex. 3.

After Mr. Kessack returned from the hospital, Officer Lucille (Lucy) Brown Piorier transferred Mr. Kessack to a housing unit with Fernando Saenz, Jr., who, along with Mr. Contreras, was an 18th Street Sureños gang member facing charges pertaining to a March 2010 birthday party where multiple victims were stabbed.  ECF No. 34, Ex. 3.  Mr. Kessack states that Sergeant Brown Piorier transferred him to a cell[3] with a gang member because she believed that Mr. Kessack intentionally injured himself in the shower in order to try and escape from jail.  ECF No. 29, Ex. A at 31:4-11.  Yet, in an August 12, 2010 email to Captain Romine, Sergeant Brown Piorier states that she housed Mr. Kessack with Mr. Saenz because she was concerned that individuals in pod two would retaliate against Mr. Kessack given that pod two had been locked down during the investigation regarding his fall in the shower.  ECF No. 34, Ex. 3.  Sergeant Brown Piorier mentions in the email that there was nothing in the jail's computers or books that indicated Mr. Kessack should not be housed with gang members. ECF No. 34, Ex. 3.  There is no documentation submitted to the Court to challenge her assertion.

---

[3] Based on the record, it is unclear whether Mr. Kessack and Mr. Saenz were housed together in a two-person cell or whether they were housed in a small unit with separate cells.  On the current record, the Court understands it was the latter given the incident report's discussion of different F cells and reference that Mr. Kessack and Mr. Saenz were playing cards at a day-room table.  ECF No. 34, Ex. 4 at 2-3.

ORDER - 4

While Mr. Kessack was housed with Mr. Saenz, he learned Mr. Saenz was a Sureños gang member.  Notwithstanding this knowledge, Mr. Kessack did not request to be moved to a different housing unit as he and Mr. Saenz had not yet had any confrontation.  Mr. Kessack and Mr. Saenz interacted socially by playing cards and watching TV with each other, but otherwise kept to themselves.  ECF No. 29, Ex. A at 46:5-21.  Then on August 8, 2010, when Mr. Kessack and Mr. Saenz were playing cards, Mr. Saenz became upset and assaulted Mr. Kessack.  Mr. Kessack suffered injuries and was taken to St. Mary's Hospital in Walla Walla, where a CT scan showed that he suffered several facial fractures.

Walla Walla County Deputy Jeff Jackson investigated the attack and took formal statements from Mr. Saenz, Mr. Kessack, and Officers Harris and Allen.  Mr. Saenz admitted he assaulted Mr. Kessack.  Formal charges were filed against Mr. Saenz, but these charges were later dropped in exchange for Mr. Saenz's guilty plea to the March 2010 knife attacks.

On August 10, 2010, Mr. Makus wrote a letter to the Walla Walla County Prosecuting Attorney's Office demanding to know why his prior calls for Mr. Kessack's safety while in custody at the jail were ignored.

On August 11, 2010, Mr. Saenz made a comment to Sergeant Brown Poirier, which was overheard by Officer Loudermilk, that Mr. Saenz had understood that Sergeant Brown Piorier housed him with Mr. Kessack in order that he "take care of" Mr. Kessack.  ECF No. 34, Ex. 11.  Later that day, Mr. Saenz retracted this statement when Officer Loudermilk questioned him about it.  *Id.*

//

/

ORDER - 5

2.    **Grievance Policy**

The Walla Walla County Jail has a Corrections Facility Grievance System Policy ("Grievance Policy"), ECF No. 30, Ex. A. Pursuant to the Grievance Policy, an inmate may submit a cite. On the single-page cite, the inmate may 1) make a request, 2) file a grievance, 3) request an explanation, or 4) seek medical attention. Before filing a cite, inmates are encouraged to "resolve disputes or complaints informally prior to filing a written grievance on the matter. However, under no circumstances will a deputy or any other staff member (contract or otherwise) attempt to discourage or threaten any inmate desiring to file a written grievance." *Id.*, Ex. A at 1. The Grievance Policy requires the corrections captain to designate a corrections deputy to serve as the grievance coordinator. *Id.* Jail personnel are required to ensure that adequate cite forms are available and that inmates have unrestricted access to the forms. The Grievance Policy requires the inmate to complete a cite within one week[4] of the incident or onset of the grieved problem and return the cite to a corrections deputy for submission to the grievance coordinator. *Id.*, Ex. A at 2. The corrections deputy is to place a completed grievance in the "grievances" file box prior to the end of his shift. *Id.*, Ex. A at 3. The Grievance Policy provides an appeals process for any cite. To appeal a decision

---

[4] At the hearing, counsel stated that an inmate has five days to file a grievance. However, the Grievance Policy sets a one-week cite filing deadline, and a five-day deadline to appeal the decision on the cite.

on a cite, an inmate submits a written appeal to the corrections captain within five days of his receipt of the grievance coordinator's response.

Within his approximate three-month stay at the Walla Walla County Jail, Mr. Kessack submitted thirty-eight cites, which requested special food due to his injuries, mouthwash to treat sores in his mouth, a mat, medical treatment, prescription refills, and permission for his mother to pick up his medical file. Many of these cites sought treatment for Mr. Kessack's pain or medical conditions resulting at least in part from the August 8, 2010 assault. *Id.*, Ex. B (cites on August 15, 17, 18, 20, 22, 26, and 31, 2010; September 11, 14, 26, and 28, 2010; October 9, 14, and 19, 2010). Based on the record, it is unclear whether Mr. Kessack appealed any of the cites; however, it is undisputed that Mr. Kessack did not appeal an October 14, 2010 cite in which he grieved the adequacy of his medical treatment. Either before or after Mr. Saenz's assault, Mr. Kessack did not submit a cite complaining that he felt unsafe or in danger, as he did not understand that he needed to file a cite if staff members responded to his oral requests concerning such housing issues.

**3.    Other Events**

Mr. Kessack was released from Walla Walla County Jail on October 27, 2010.

Beginning December 15, 2012, Mr. Kessack was in the custody of Pierce County Jail, until July 26, 2013. While he was housed at Pierce County Jail, Mr. Kessack, through counsel, filed a tort claim form under RCW 4.96.020, with Walla Walla County pertaining to the August 8, 2010

ORDER - 7

1   attack.  This lawsuit was later filed on June 5, 2013, by his counsel.

2   ECF No. 1.

3   **B.    Summary-Judgment Standard**

4        Summary judgment is appropriate if the record establishes "no

5   genuine dispute as to any material fact and the movant is entitled to

6   judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party opposing

7   summary judgment must point to specific facts establishing a genuine

8   dispute of material fact for trial.  *Celotex Corp. v. Catrett,* 477 U.S.

9   317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475

10  U.S. 574, 586-87 (1986).  If the non-moving party fails to make such a

11  showing for any of the elements essential to its case for which it bears

12  the burden of proof, the trial court should grant the summary-judgment

13  motion.  *Celotex Corp.*, 477 U.S. at 322.

14  **C.    Authority and Analysis**

15       **1.    Administrative Remedies**

16       The parties disagree whether Mr. Kessack was required to exhaust

17  administrative remedies under the Grievance Policy before filing this

18  lawsuit and, if required, whether he exhausted the available

19  administrative remedies.  The Prisoner Litigation Reform Act (PRLA)

20  mandates that prisoners exhaust all available administrative remedies

21  before filing "any suit challenging prison conditions."  42 U.S.C. §

22  1997e(a).  This exhaustion requirement applies to "all inmate suits

23  about prison life, whether they involve general circumstances or

24  particular episodes, and whether they allege excessive force or some

25  other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

26

1    First, as to whether Mr. Kessack is subject to the PLRA, Defendants

2    rely on *Gibson v. Brooks*, 335 F. Supp. 2d 325 (D. Conn. 2004), to argue

3    that because Mr. Kessack was in jail when he filed this lawsuit he was

4    a "prisoner" for PLRA purposes and he must have exhausted administrative

5    remedies under the Grievance Policy before filing this lawsuit, and his

6    failure to do so results in dismissal of this lawsuit.  Mr. Kessack

7    argues that the PLRA's administrative-exhaustion requirement does not

8    apply to him because he was not in Walla Walla County Jail custody when

9    this lawsuit was filed, relying on *Talamantes v. Leyva*, 575 F.3d 1021

10   (9th Cir. 2009).

11    The Court finds the PLRA administrative-exhaustion requirement

12   does not apply to this lawsuit.  The PLRA mandates that a "prisoner"

13   exhaust all administrative remedies before filing "any suit challenging

14   prison conditions." 42 U.S.C. § 1997e(a).  The PLRA defines "prisoner"

15   as "any person incarcerated or detained in any facility who is accused

16   of, convicted of, sentenced for, or adjudicated delinquent for,

17   violations of criminal law or the terms and conditions of parole,

18   probation, pretrial release or diversionary program." 42 U.S.C. §

19   1997e(h).  Given the PLRA's application to "prisoners," the Ninth

20   Circuit determined that grievance procedures need not be exhausted by

21   individuals, who are released from prison and who then bring a lawsuit

22   challenging prior confinement conditions. *Talamantes*, 575 F.3d at 1024;

23   *see also Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999).  The Ninth

24   Circuit stated, "If Congress had intended for all individuals, including

25   former prisoners, who wished to bring an action regarding prison

26   conditions to exhaust all available administrative remedies, it could

1    have expressed that intention in the statute.  Congress did not do so."

2    *Id.*

3        Although Mr. Kessack was in custody—a prisoner—when he filed this

4    lawsuit, he was not in the custody of Walla Walla County.  Therefore,

5    the Court finds the purposes of the PLRA are not furthered by applying

6    the PLRA administrative-exhaustion requirement to this lawsuit.  *See*

7    *Talamantes*, 575 F.3d at 1024 (concluding that the PLRA's purpose was to

8    reduce frivolous lawsuits filed by prisoners who have the opportunity

9    and motivation to bog down the jail's litigation system).  Mr. Kessack

10   challenges conditions in a prison facility different than the prison

11   facility that he was a prisoner in when he filed the lawsuit; in

12   addition, Pierce County Jail is not operated by Walla Walla County.

13       Therefore the facts here differ from those in *Gibson*, 335 F. Supp.

14   2d 325, which is relied on by Defendants.  In *Gibson*, like the plaintiff

15   in *Berry v. Kerik*, 366 F.3d 85 (2d Cir. 2003), the plaintiff was

16   incarcerated (for a second time) at the *same* institution against which

17   he filed a grievance pertaining to his first incarceration.  Here, Mr.

18   Kessack was not at Walla Walla County Jail when he filed this lawsuit

19   but rather was at Pierce County Jail.  Mr. Kessack would have been

20   unable to exhaust his Walla Walla County Jail administrative

21   requirements when housed at Pierce County Jail because the Grievance

22   Policy required him to submit a cite to a corrections deputy at the

23   Walla Walla County Jail, who then was to physically place the cite in

24   the grievance file box.  Furthermore, per the terms of the Grievance

25   Policy, a Walla Walla County Jail prisoner could file a cite pertaining

26   to "[a] condition[] within the corrections facility," which given the

title, terms, and purpose of the Grievance Policy, clearly referred to Walla Walla County Jail.

Accordingly, the Court determines the PLRA's administrative-exhaustion requirement does not apply to Mr. Kessack's lawsuit filed against Walla Walla County Jail, when he was housed in Pierce County Jail. The Court denies Defendants' summary-judgment motion in this regard.

Even assuming that the PLRA applies to this lawsuit, the Court finds Mr. Kessack sufficiently exhausted the administrative remedies of which Walla Walla County had advised him were available. Defendants, as the correctional institution, have the burden to prove there was an administrative remedy available to the prisoner, Mr. Kessack, and that the administrative remedy was not exhausted. *See Albino v. Baca*, 747 F.3d 1162, 1166, 1171-72 (9th Cir. 2014). Once the Defendants carry their burden, Mr. Kessack must produce evidence to show that the existing and generally available administrative remedies were effectively unavailable to him. *Id.* at 1172. Requiring prisoners to exhaust the available administrative remedies ensures that the correctional institution has the opportunity to correct any mistakes itself and promotes efficient claims resolution. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

The Grievance Policy required Mr. Kessack to file a cite within one week of the incident or onset of the problem for which he was submitting a cite. Through his § 1983 claim, Mr. Kessack challenges Sergeant Brown Piorier's decision to house him with Mr. Saenz. Following the attack on August 6, 2010, Mr. Kessack was no longer housed

with Mr. Saenz.  Accordingly, there was no reason for Mr. Kessack to file a cite seeking different housing.  In addition, it had been Mr. Kessack's experience that he could orally request a housing change.  As to matters that Mr. Kessack did seek relief from the jail by filing a cite following his assault, such as medical treatment for his injuries suffered during the attack, Defendants highlight that Mr. Kessack never appealed the grievance coordinator's response to these cites as is required by the Grievance Policy.  However, Defendants did not submit evidence to show that Mr. Kessack was aware of the Grievance Policy's appeal process.  There is no evidence submitted that Mr. Kessack obtained a copy of the Grievance Policy while he was at Walla Walla County Jail.  And the cite form itself does not reference the right (and process) to appeal the grievance coordinator's decision. Therefore, Defendants failed to establish that Mr. Kessack was aware of the appeal process.

Under these circumstances, the Court finds Mr. Kessack has shown he took advantage of the grievance process that he was advised was available to him: he was unaware of the need to file a cite pertaining to a housing decision, which post-incident no longer applied; he filed cites seeking medical treatment for his suffered injuries; and there is no evidence that he was aware of the need to file an appeal of a cite decision.  For these reasons, Defendants are not entitled to summary judgment based on their failure-to-exhaust administrative-remedies affirmative defense.

//

/

ORDER - 12

### 2.   Plaintiff's Claims

Defendants ask the Court to find that Mr. Kessack fails to present evidence to support his 42 U.S.C. § 1983 claim and state-law claims. For the reasons set forth below, the Court grants Defendants' summary-judgment motion as to the § 1983 claim and denies the motion as to the state-law claims brought against Walla Walla County.

### a.   42 U.S.C. § 1983: Failure to Protect Claim

Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the U.S. Constitution or federal statutes.   42 U.S.C. § 1983[5]; *Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995).   For purposes of this motion, the parties agree Defendants acted under color of state law.   The focus is instead on whether Mr. Kessack presented evidence to establish a genuine dispute of fact as to whether Defendants violated a constitutional right held by Mr. Kessack.   The specific constitutional right at issue is Mr. Kessack's right to be free from injury from a

---

[5] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

ORDER – 13

1  state-created danger pursuant to the Fourteenth Amendment's due-process

2  clause.

3      This due-process right requires that prison officials not be

4  deliberately indifferent to their duty to protect an inmate from

5  substantial risk of serious harm from other inmates. *L.W. v. Grubbs*,

6  92 F.3d 894, 898-99 (9th Cir. 1996); *see also Farmer v. Brennan*, 511

7  U.S. 825, 834 (1994); *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1224-25

8  (D. Ariz. 2003) (discussing the framework for analyzing Fourteenth

9  Amendment state-created-danger claims and utilizing the Eighth

10  Amendment's deliberate-indifference objective and subjective

11  standards). "Deliberate indifference" has both a subjective and an

12  objective component: "[a] prison official must be 'aware of facts from

13  which the inference could be drawn that a substantial risk of serious

14  harm exists, and . . . must also draw the inference.'" *Labatad v. Corr.*

15  *Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (quoting *Farmer*, 511

16  U.S. at 837).    Given the subjective component to deliberate

17  indifference, "[l]iability may follow only if a prison official 'knows

18  that inmates face a substantial risk of serious harm and disregards

19  that risk by failing to take reasonable measures to abate it.'" *Id.*

20  (quoting *Farmer*, 511 U.S. at 947).

21      The record does not establish a genuine dispute of fact as to

22  whether Sergeant Brown Piorier's decision to house Mr. Kessack with Mr.

23  Saenz was made with knowledge that Mr. Kessack faced a substantial risk

24  that Mr. Saenz would harm him, and that she chose to disregard that

25  risk.  There is no documentation or evidence that Sergeant Brown Piorier

26  knew there was a concern with housing Mr. Kessack with Mr. Saenz, or a

Sureños gang member.  Although Mr. Kessack had reported problems with gang members in pod one, there is no record he reported similar problems with gang members in pod two.  And Mr. Kessack had not previously told jail staff that he was concerned with being housed with Mr. Saenz, even though he knew Mr. Saenz was a Sureños gang member.  In fact, Captain Romine stated at his deposition that Sergeant Brown Piorier was not aware of the concern of Mr. Kessack being housed with gang members.  ECF No. 34, Ex. 10 at 45:20-25 & 46:1.

Mr. Kessack did present evidence that Mr. Saenz made a post-attack comment to Sergeant Brown Piorier on August 11, 2010, that he understood he was to "take care of" Mr. Kessack.  Yet, Mr. Saenz withdrew this statement later that day when Officer Loudermilk questioned him about it.

And although Captain Romine stated during his deposition that he would not have housed Mr. Kessack and Mr. Saenz in the same cell because they were both unable to "get along with people," ECF No. 34, Ex. 10 at 33:9-23, and "neither play[ed] well with others," there is no information in the record that Sergeant Brown Piorier knew that Mr. Kessack should not be housed with Mr. Saenz or a Sureños gang member, or that she should have known such if she had reviewed the jail's board or computer files.  There also is no evidence regarding Mr. Saenz's prior jail conduct and whether he had a disciplinary record that reflected that he posed a substantial danger to a cellmate.

In summary, the record fails to establish a genuine dispute of fact that Sergeant Brown Pirorier, and Walla Walla County, was deliberately indifferent to Mr. Kessack's right to be free from a state-

created danger.  *See Labatad*, 714 F.3d at 1160 ("Without more, such as information about who Labatad spoke to or what he said, we cannot infer that any of the defendants or officials responsible for making the [cell] assignment were aware that Labatad faced a substantial risk of harm [by a rival gang member housed with him]."); *Banks v. Deschutes Cnty.*, 408 Fed. App'x 94, 95 (9th Cir. 2011) ("Holland's disciplinary record does not prove that Holland posed a *substantial* risk of serious harm to Banks, and it does not prove that prison officials were subjectively aware of any risk Holland posed."); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (determining that evidence that prison officials knew that plaintiff's cellmate acted like "a caged animal" was insufficient evidence to establish a genuine dispute of fact as to whether the prison officials deliberately disregarded the risk that the inmate posed to plaintiff's safety); *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (finding summary judgment in defendants' favor appropriate because plaintiff's two statements to prison officials that he feared for his life were insufficient for the officers to know that the plaintiff was at risk of being physically assaulted by gang members because of his non-gang member status).  For these reasons, the Court grants summary judgment in Defendants' favor on the § 1983 claim.

      **b.  State-Law Claims**

In his response, ECF No. 33, Mr. Kessack clarifies that he asserts only state-law 1) negligent-supervision and 2) negligent-training

claims against Walla Walla County.[6]  *See also* ECF No. 1 at 10-12. Because these claims are not brought against the individual Defendants, nor are facts presented at summary judgment to support the assertion of these negligence claims against the individual Defendants, the Court grants summary judgment to Defendants James Romine, Ryan Allen, Tanner Harris, and the deceased J. Michael Humphreys.

Under Washington law, Mr. Kessack must support his negligence claims by proving 1) Walla Walla County owed him a duty, 2) Walla Walla County breached that duty, 3) Mr. Kessack suffered injuries, and 4) his injuries were proximately caused by the breach of the duty.  *See Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48 (1996).  The Court proceeds to apply these elements to Mr. Kessack's negligent-supervision and negligent-training claims.

As to Mr. Kessack's negligent-supervision claim against Walla Walla County, there generally is no duty to prevent a third party from intentionally harming another.  *Niece v. Elmview Group Home*, 131 Wn.2d 39, 43 (1997).  However, a duty arises where:

> (a) a special relation exists between the [defendant] and the third person which imposes a duty upon the [defendant] to control the third person's conduct, or
> (b) a special relation exists between the [defendant] and the other which gives the other a right to protection.

*Peterson v. State*, 100 Wn.2d 421, 426 (1983) (quoting Restatement (Second) of Torts § 315 (1965)).  Based on these duty principles, a prison has a special relationship with an individual in its charge and

---

[6]  Plaintiff's counsel failed to comply with the Scheduling Order's requirement of filing a notice of to-be-adjudicated claims.

ORDER - 17

owes that inmate a duty to "exercise reasonable and ordinary care to protect [a] prisoner's life and health." *Kusah v. McCorkle*, 100 Wash. 318, 323 (1918) (internal quotation removed).  However, a prison and its officials are not the insurer of inmate safety, *Woody v. Ohio Dep't of Rehabilitation & Corr'n*, 61 Ohio Misc. 2d 275, 277 (1988), and cannot be found negligent for "failing to prevent what he could not reasonably anticipate," *Riggs v. German*, 81 Wash. 128, 131 (1914).  Therefore, "to hold the [municipality] liable for injury to one inmate inflicted by another inmate, there must be proof of knowledge on the part of prison officials that such an injury will be inflicted, or good reason to anticipate such, and then there must be a showing of negligence on the part of these officials in failing to prevent the injury." *Winston v. State*, 130 Wash. App. 61, 64 (2005); *see also* Restatement (Second) of Torts § 314A, Cmt. (e) ("The duty in each case is only one to exercise reasonable care under the circumstances.  The defendant is not liable where he neither knows nor should know of the unreasonable risk, or of the illness or injury. He is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate.").

The Court finds whether Walla Walla County Jail officials should have had good reason to anticipate the injury inflicted by Mr. Saenz on Mr. Kessack is a triable issue of fact.  This negligence standard is a lower standard than the § 1983 deliberate-indifference standard.  Here, the jury could reasonably determine that Walla Walla County Jail officials had good reason to anticipate that Mr. Saenz would inflict injury on Mr. Kessack because 1) of Mr. Saenz's suspected violent

assaultive conduct, 2) Mr. Saenz was a Sureños gang member and an alleged accomplish of Mr. Contreras, with whom Mr. Kessack had prior disagreements with concerning the television, and 3) Mr. Kessack and his counsel had previously advised jail staff that Mr. Kessack was concerned about being housed with gang members.   Although the evidence is insufficient to establish a triable issue of fact as to the § 1983 claim, the evidence is sufficient to establish genuine disputes of fact as to whether the Walla Walla County Jail officers failed to use reasonable care to protect Mr. Kessack from an attack by Mr. Saenz. Accordingly, the Court denies Defendants' motion in this regard.

As to Mr. Kessack's negligent-training claim against Walla Walla County, the Court also denies summary judgment in this regard.   As mentioned above, Walla Walla County had a duty to "exercise reasonable and ordinary care to protect [a] prisoner's life and health." *Kusah*, 100 Wash. at 323.   Walla Walla County likewise had a duty to adequately train its officers to satisfy this standard.

Here, the officers, who received complaints from Mr. Kessack regarding Sureños gang members and his safety concerns, and Officer Hall, who received such information from Mr. Makus, did not note that information in Mr. Kessack's jail records, the computer, the pass-on books, or the boards.   The jury could reasonably determine that Walla Walla County failed to properly train its jail staff to record such information—information that is reasonably necessary to protect a prisoner's life or health.   The jury could also reasonably find that if jail staff had recorded Mr. Kessack's concerns about being housed with gang members, Sergeant Brown Piorier would not have housed him together

1   with Mr. Saenz.  Accordingly, the Court finds there are triable issues

2   of fact as to what Walla Walla County's training was regarding

3   memorializing an inmate's housing requests and concerns, and

4   communicating such information amongst the officers, and whether a

5   failure to train in this regard, if any, proximately caused Mr.

6   Kessack's injuries.

7   **D.   Conclusion**

8        Accordingly, **IT IS HEREBY ORDERED**:

9        1.   Defendants' Motion for Summary Judgment, **ECF No. 28**, is

10            **GRANTED IN PART** (§ 1983 claim and state-law claims against

11            individual Defendants) **and DENIED IN PART** (remainder)**.**

12       2.   The caption shall be **AMENDED** as follows:

13            ERIK KESSACK, individually,

14                      Plaintiff,

15                 v.

16            WALLA WALLA COUNTY,

17                      Defendant.

18       **IT IS SO ORDERED.**  The Clerk's Office is directed to enter this

     Order and provide copies to all counsel.

19       **DATED** this  23rd  day of December 2014.

20

21                          s/Edward F. Shea
                     _____
                          EDWARD F. SHEA
22                Senior United States District Judge

23

24

25

26

Q:\EFS\Civil\2013\5062.msj.lc1.docx

ORDER – 20